**Vecchio et al. *v.* City of Pittsburgh, Appellant.**

Argued May 2, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Austin L. Staley,* Assistant City Solicitor, and with him *Cornelius D. Scully,* City Solicitor, for appellant.

*Ralph P. Tannehill,* for appellee.

OPINION BY STADTFELD, J., July 13, 1934:

This is an action of trespass by Nicholas Vecchio, in his own right and Edward W. Vecchio, a minor, by Nicholas Vecchio, his father and next friend, against the city of Pittsburgh, to recover damages for personal injuries sustained by said minor.

The statement of claim alleged that the city defendant maintained a recreation center known as the "Carter Street Playgrounds" whereon it had an amusement device consisting of a platform about 12 feet in height, being reached by steps, and with a slide or slides extending to the ground; on the platform

there was a single pipe railing about 40 inches above the platform; that on September 10, 1930, about 5:30 o'clock P. M., the minor plaintiff was at said playgrounds when he fell from said platform to the ground and was seriously injured. The negligence alleged was that said platform had no guard or an insufficient or improper guard; that children of immature age had for a long time frequented this playground and used this slide, and that the only guard was a single string of pipe which did not entirely surround said platform, and was at such height that a child could easily fall or roll under it and off the said platform; that the city failed to have any employes at said playgrounds and failed to warn or instruct said minor child as to the danger incident to the use of said slide, and permitted large numbers of children to use the said slide without any supervision or care for their safety.

The testimony established the following facts: The slide in question was on private property; that a city employe, a Mr. Morsaint, whose duties were those of a street foreman in the Bureau of Highways and Sewers, had placed this slide on this property of his own accord and with the consent of the owner of the property, one Mr. Schmelz. The slide had been on property known as the Italian Hall in Hays Borough, which had subsequently been annexed to the city of Pittsburgh, and had to be moved from there because of a celebration this organization was going to have. The property of Mr. Schmelz was vacant ground located on Carter Street, and was 100 x 100 feet in size. The slide was erected on this latter lot by the said Mr. Morsaint with the aid of some other laborers under him, and was in use for about three weeks prior to the accident. On the day of the accident, the minor child was taken by a thirteen-year-old girl neighbor from its home, with the consent of the mother of the child, to

where this slide was located. Other children of the same age as this child used the slide.

There was no evidence that the city of Pittsburgh by any ordinance or resolution authorized the placing of this equipment on this private property, or that the city made any lease with the owner to use the property for any purpose, or that the city authorized the use of this property as a playground; there was no evidence that Mr. Morsaint, employed in the Bureau of Highways and Sewers, had any authority to place this equipment on this private property or to have it used by children for play purposes or any other purpose.

There was affirmative, uncontradicted evidence on the part of the Director of the Department of Public Works of the city of Pittsburgh, which has by law charge and control of all property of the city, including playground equipment, that the city did not own, lease or authorize the use of this private property as a playground or for any other purpose, and there was like testimony given by the Superintendent of the Bureau of Recreation, as also that he had given no authority for the removal of this slide from the Italian Hall to Carter Street. There was also affirmative, uncontradicted evidence on the part of the Supervisor of the Bureau of Highways and Sewers that Mr. Morsaint had no authority to do work on private property.

There was evidence that the slide was taken down the morning following the accident and placed in one of the fire engine houses of the city, and was afterwards used in McBride Park, a public park in the city of Pittsburgh.

The ordinance of the city of Pittsburgh creating the Bureau of Highways and Sewers, and defining its duties, which was offered in evidence, limits its jurisdiction to the streets, highways and sewers belonging to the city, and the cleaning and repairing of the same, and the care, custody and control of all city

property and tools relating to the cleaning and repairing of the said streets, etc.

There was also offered in evidence the ordinance of the city of Pittsburgh creating the Bureau of Recreation, approved February 1, 1913, giving said Bureau charge, control and supervision of all playgrounds then owned or thereafter acquired by the city.

Binding instructions for defendant were refused. The case was submitted to the jury to find whether or not the slide belonged to the city of Pittsburgh, and whether or not the property where it was put was a city playground, and whether there was negligence in the manner in which the platform of the slide was guarded, and whether there was negligence on the part of the parents in permitting this child, then three and one-half years old, in charge of a girl, 13 years old, to play on this slide.

The jury rendered a verdict in favor of the father for $454, and for the child for $533. A motion for new trial ex parte plaintiff was overruled in an opinion by MACFARLANE, P. J. From that judgment this appeal was taken by defendant. The single assignment of error is the refusal to enter judgment for defendant n. o. v.

There was no evidence to show that the city was a party to placing the slide in question on city property; no evidence of any authority given by the city as a municipality to placing the slide on private property. The evidence is entirely limited to the fact that a city employee, connected with the Bureau of Highways and Sewers, had placed this slide on this property with the consent of the owner of the property. The Bureau of Highways and Sewers had no jurisdiction over private property, nor of the establishment or maintenance of playgrounds. The unauthorized act of the foreman in no manner bound the city

or made it responsible for it. The Bureau of Recreation did not authorize the establishment of a playground on the property in question, nor the removal of any apparatus thereto, had no knowledge of its removal, and did not maintain any supervision over the place to which this slide had been removed. In the absence of any authorization, knowledge or consent by said Bureau, or supervision by it, there was no duty on the part of the city, and in the absence of such duty, there can be no responsibility. The burden of proof was on plaintiffs. The mere ownership of the slide by the city, as found by the jury, cannot alone establish any liability on the part of the city.

Appellee cites and relies on the case of Glase v. Philadelphia, 169 Pa. 488, 32 A. 600. In that case the plaintiff was injured by a fall as a result of a defective covering over a manhole located on a public promenade maintained by the city as a place of rest and recreation. The Supreme Court, in reversing the lower court which had refused to set aside a compulsory non-suit, said: "It (the city) was not compelled to provide any such place of rest and pleasure, but when it did so, and invited the public to go upon it, clearly, according to all the cases, it owed to the public the duty of at least ordinary care." In that case there was no question of the maintenance of the place by the city. In the instant case that was the very question in controversy on which the liability of the city depended. Lacking in evidence in that respect, the request for binding instructions should have been granted.

In view of our disposition of the case on the question discussed, supra, it is not necessary to pass on the question of contributory negligence of the father plaintiff.

The assignment of error is sustained and judgment reversed and now entered for defendant.